# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ODESSA BABBITT
Plaintiff

v.

C.A. No. 07-274 DLM

PRI XVIII, L.P. d/b/a
The Westin Providence

**PLAINTIFF, ODESSA BABBITT'S RESPONSES TO DEFENDANT, PRI XVIII, L.P. d/b/a THE WESTIN PROVIDENCE'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, Odessa Babbitt presents to the Defendant, PRI XVIII, L.P. d/b/a The Westin Providence ("Defendant") the following interrogatory responses.

INTERROGATORIES

1. State the full name, residence and/or business address, employer and the title and/or position of each person who answered and/or assisted in preparing the answers to these interrogatories, and state which interrogatory each person answered and/or assisted in answering.

**Response No. 1**

a. Odessa Babbitt

b. Stephen T. Fanning, Esq.

c. Brie G. Fanning-DiLibero, Esq.

2. Identify each person who contributed information, or who was consulted, in answering these interrogatories.

**Response No. 2**

a. Odessa Babbitt- Plaintiff

b. Stephen T. Fanning, Esq.

RECEIVED OCT 25 2007

c. Brie G. DiLibero, Esq.

3. Identify all documents utilized or reviewed in answering these interrogatories.

**Response No. 3**

All documents utilized in answering these Interrogatories have been attached in Plaintiff's responses to Defendant's Request for Production.

4. State the name of the any elementary, middle, and high schools and/or other institution of learning you attended, the dates of attendance, major or course of study and degree if obtained, and any and all extra-curricular activities in which you participated.

**Response No. 4:**

Objection. Plaintiff objects to this Interrogatory insofar as it seeks to request information regarding any extracurricular activities in which Plaintiff participated. Plaintiff objects on the basis that this request is not reasonably calculated to the discovery of relevant evidence.

Further answering and without waiving said objection, Plaintiff attended the Martin Luther elementary school in Providence, RI until the fifth grade ('88-'93). Plaintiff then attended Myron J. Francis elementary school located in East Providence, Rhode Island ('93-'94). For junior high school, Plaintiff attended Martin Middle School in East Providence, Rhode Island (94-'97). Plaintiff attended East Providence high school ('97-'99).

5. Identify all of your employment since age sixteen through the date of your answers to these interrogatories. For each such period of employment, identify the name and address of each of your employers and immediate supervisors, the dates of your employment, and the reasons for leaving or terminating each such employment.

**Response No. 5:**

a. Empire Protective Services: Providence, RI 02903 (out of business); Plaintiff worked Spring of '03-'04; Supervisor Dave Roach; Plaintiff Quit.
b. Westin; Providence, RI; Plaintiff worked from October '05-January '06; Supervisor Donna (last name unknown); Plaintiff was terminated.
c. Westin; Providence, RI; Plaintiff worked from June '06- Sept. '06; Supervisor Regina Hole; Plaintiff Terminated.

6. State in detail all facts on which you base the allegation set forth in ¶16 of your Complaint.

**Response No. 6:** Throughout the tenure of Plaintiff's employment, the Employer never informed Plaintiff that her work performance fell below work standards or that she her work did not meet the Employer's legitimate work expectations. Plaintiff recalls two incidents where she was reprimanded for work performance, both months prior to her termination and neither warranting any serious reprimand. In one instance Plaintiff forgot to give a guest a spoon which resulted in a warning and in one instance the Plaintiff called the Employer to say she would be late, was approximately 15 minutes late, and received a warning. Approximately a month and a half later the Employer used this incidence of tardiness as the basis to terminate the Plaintiff after she reported workplace harassment.

7. State in detail all facts on which you base the allegation set forth in ¶18 of your Complaint that you complained to your manager that you had been subjected to sexual harassment, and identify all persons having knowledge of such facts.

**Response No. 7:**

On September 1, 2006, Plaintiff's co-worker in Room Service, Marcus Villa, told Plaintiff that another Westin employee named Tia, had a crush on a gentleman named Sandy Rodriguez, who worked in the Shipping and Receiving Department. Marcus, who is a homosexual, told Plaintiff that he found Sandy to be very attractive and that he heard that Sandy had a large penis. Marcus then told the Plaintiff that he has previously looked

and that he can tell that Sandy's penis is very large. Plaintiff felt very uncomfortable at these comments and indicated that he stop this behavior. Instead of stopping however, Marcus, went on in detail what he would like to do with Sandy and his penis. Plaintiff was compelled to stay in the same area with Marcus because part of her job was to go to every floor and collect the dirty trays and tables, and on this day she and Marcus were the only two on duty.

On September 6, 2006, Plaintiff heard from Tia that Marcus was telling others in the hotel that Plaintiff wanted to have sex with Sandy. Plaintiff confronted Marcus about this and asked that he stop this harassment and inappropriate behavior towards her. Plaintiff contacted her manager, Regina, and asked her to come to the Room Service Department. When Regina arrived, Plaintiff informed her about the workplace misconduct that was taking place. Regina took no action but to ask if the Plaintiff was crazy. Plaintiff then asked if she could speak to Regina in private in her office. Plaintiff wanted to apprise Regina of how this misconduct by Marcus was compounding to the existing harassment which Plaintiff had been enduring by her male co-workers. In this meeting, Plaintiff told her supervisor how male co-workers from her department and other departments were consistently coming to her work area to stare at her, and her body parts. Plaintiff explained to her supervisor that these actions made her feel extremely uncomfortable and impacted on the terms and conditions of her employment.

Plaintiff asked her Supervisor to address the harassment. In response, her Supervisor shook her head up and down and told her to go back to work, which Plaintiff did. Within minutes, Plaintiff was called back to the office where there was a woman who Plaintiff later learned was a shop steward. During this second meeting, Plaintiff was notified that due to hotel management, she had to be let go because the hotel does not tolerate any kind of harassment and that she had been tardy.

8. As to each distinct incident of sexual harassment which you allege occurred during the course of your employment with the Defendant, please provide the following information:

a. The date of any such event.

b. An exact description of the location where the incident allegedly took place.

c. A complete description of said incident.

d. The names and addresses of all alleged perpetrators of said incident.

e. The names and addresses of all alleged witnesses of said incident.

f. The names of any of Defendant's managers who plaintiff alleges witnessed said incident.

g. The date of first report of said incident to any manager of the Defendant.

h. A description of all documentation of said incident believed to exist.

**Response No. 8:**

June 11, 2006: Plaintiff's 1st day as Room Service Attendant: Plaintiff noticed right away that men from other departments such as Banquets, security, engineering, and others, were coming to her work area to look at her and/or converse about her and her body parts. One man in Security would come on a regular basis to stare at Plaintiff's body. One of Plaintiff's co-workers, Gregg, informed Plaintiff that the security guard would only come to the kitchen area where Plaintiff was working, and that he would come down to stare at her body. George Cook, who was a fellow co-worker told Plaintiff that a man in his department named Juan, said that some of the guys at the job thought Plaintiff was attractive, and were coming down to the room service area to hang out and stare and Plaintiff's body.

Plaintiff's male co-workers would say in Spanish to an older Hispanic man Gregg the Plaintiff looked sexy and that he (Gregg) was lucky to be working with her.

A cook named "Edgar" would, on a number of occasions, yell out "room service" just so that Plaintiff would walk over to him. When Plaintiff would get there, there

would be no room service order and her male employees would laugh as they watched her walk away.

When Plaintiff had to use the Ladies' room she would have to pass by the laundry and housekeeping rooms. On a continuous and persistent basis, male workers from these rooms would come out and watch her as she walked into the bathroom, then continue to watch her as she walked from the bathroom to the elevators. As these men watched the Plaintiff they would whistle and make comments in an effort to intimidate and unnerve her.

Plaintiff was also harassed by the co-workers she worked alongside. Plaintiff's male coworkers watched her as she walked back and forth collecting food for the guests. On a continuous basis these male coworkers made perverse and obscene comments towards the Plaintiff, whistled, made noises to get her attention and said things like "look at that" as she walked by. On many occasions, Plaintiff observed her male co-workers speaking in Spanish about her. It was apparent that their conversation was sexual in nature and directed to the Plaintiff by their facial expressions, body language and the tone of voice.

On one specific occasion, Plaintiff was working second shift and was rushing to the elevator to bring a guest their food. She called to a coworker named "David" to hold the elevator by saying, "I'm coming, I'm coming." "John" one of the cooks, yelled out, in a sexual manner, "I'm coming too!" (in a reference to ejaculation) and started to laugh.

In another incident, a server in the Agora restaurant at the Westin named "Johan" looked right at the Plaintiff, smirked, and made a slurping sound in a reference to oral sex when she walked over to pick up food for a guest.

In an additional incident, a male co-worker named "Alberto," who worked in banquets, spoke to a co-worker George Cook about Plaintiff. Mr. Cook asked Alberto to stop making inappropriate comments about the Plaintiff and that the Plaintiff was a good, respectable girl. "Alberto" responded "with a body like that, she is not a good girl."

Throughout Plaintiff's employment, she worked in an environment of consistent, pervasive harassment perpetrated by her male co-workers. This consisted of the above-referenced conduct and also included unwanted attention, looks, remarks, whistling, rumors, comments, jeers, and stares.

9. If you are aware of any incidents of sexual harassment against any other person employed by the Defendant, please provide the following information:

a. The date of any such event.

b. An exact description of the location where the incident allegedly took place.

c. A complete description of said incident.

d. The names and addresses of all alleged perpetrators of said incident.

e. The names and addresses of all alleged victims of said incident.

f. The names and addresses of all alleged witnesses of said incident.

g. The names of any of Defendant's managers who plaintiff alleges witnessed said incident.

h. The date of first report of said incident to any manager of the Defendant.

i. A description of all documentation of said incident believed to exist.

**Response No. 9:** Objection. This request is overly broad, seeks information in large part that could not be within the purview of Plaintiff's reasonable knowledge and is not calculated to lead to the discovery of relevant evidence. Further answering, and without waiving said objection, Plaintiff responds that various incidents of sexually oriented conduct occurred in the workplace were tolerated by the Employer.

10. Identify all communications with any employee of the Defendant during the course of your employment with the Defendant that you consider to have constituted sexual harassment.

**Response No. 10:** Please see Response No. 8

11. Describe in detail your understanding of whether or not the Defendant had a written policy concerning sexual harassment, what that policy was, and when you first had knowledge of or became aware of the Defendant's policy regarding sexual harassment.

**Response No. 11:** Objection. To the extent the Employer maintained a written policy regarding sexual harassment at the time of the incidents at issue in this action, said document (s) speak for themselves. Further answering, and without waiving said objection, Plaintiff recalls having been given some type of policy at the time of her hire, without recalling any particular details of the policy.

12. Describe in detail all actions which you took to communicate to the perpetrators of the alleged harassment that their conduct was unwelcome.

**Response No: 12**: Plaintiff never engaged or participated in any of the misconduct that she alleges above, communicating by her behavior that she neither welcomed nor cared to tolerate such offensive behavior.

13. State in detail all facts on which you base the allegation set forth in ¶24 of your Complaint that your employment with the Defendant was terminated was because you are female.

**Response No. 13**: See Response No. 6. Further answering, Plaintiff states that she was not terminated due to legitimate performance based issues but because she was

female. Plaintiff was terminated for pre-textual reasons, approximately one hour after reporting she complained about workplace based harassment based on her gender.

14. If you have ever been convicted of a crime, other than a minor traffic violation, please state: the crime of which you were convicted; the date of each such conviction; and the court in which each conviction was entered.

**Response 14**: None.

15. State in detail all physical and/or emotional injuries you claim as a result of the matters alleged in your Compliant.

**Response No. 15**:

Plaintiff has suffered emotional distress, post traumatic stress disorder, anxiety, depression, sleep disturbances, tachycardia, personal relationship issues, and related symptoms as a result of the mistreatment from which she has suffered.

16. Describe in detail the manner and extent to which Defendant's alleged conduct has caused irreparable harm to your reputation and professional mobility.

**Response No. 16:** Plaintiff has been advised by her treating medical care provider to remain out of work. It is Plaintiff's belief and understanding that, both during and after her employment, demeaning and false rumors have been spread about her character. Moreover, she is believed to be falsely listed in the Defendant's official personnel documents as being terminated for misconduct, an assertion that will permanently influence her future employability.

17. Describe in detail the manner and extent to which Defendant's alleged conduct has caused you extreme humiliation, as well as physical and emotional injury.

**Response No. 17:** See Previous Response No 15, 16.

18. State in detail all facts on which you base the allegation set forth in ¶42 of your Complaint, including a detailed description of Defendant's allegedly unlawful conduct for which you claim you indicated an "intention to seek remedial assistance."

**Response No 18:** See Response No 6.

19. Identify all health care providers, healers or practitioners whom you have consulted or been examined by since age seven through the date of your answers to these interrogatories. For each such any health care provider, healer or practitioner, please provide the date of any consultation and/or examination, the reason for each such consultation and/or examination, and the diagnosis, if any, related to you by such medical professional, healer or practitioner.

**Response No. 19:**

1990-91, 1993-1998: Jone Garfield, therapist and Dr. Greer, psychiatrist at the Providence Center on Hope Street in Providence, RI –diagnosed with Post Traumatic Stress Disorder: Prescribed the anti-depressant Paxil

September 2006-current, Dr. Kanter, psychiatrist, RI Hospital Clinic, Located on Plain Street in Providence, diagnosed by DR. Kanter with post-traumatic stress disorder and prescribed medication Zoloft and Trazadone

Primary Care Doctor is Dr. Megan Eckstein & Dr. Toll, Prescribe Heart Medication, propranaolol.

20. Identify all of medications which have been prescribed for you—or any non-prescription medications which you have used on a regular basis—since age seven through the date of your answers to these interrogatories, describing in detail the condition for which such medication was prescribed, the dates when you consumed such

medications, and the name and address of any health care provider, healer or practitioner who prescribed such medications.

**Response No. 20:** Objection. This Interrogatory is overly broad and not reasonably calculated to the discovery of relevant information. Notwithstanding this objection, please refer to Plaintiff's response in INTERROGATORY NO. 19 for Plaintiff's current medications.

21. State in detail the amount of damages, compensation or other relief to which you claim to be entitled pursuant to the Complaint.

**Response No. 21:** Plaintiff has been absent from work since on or about September 8, 2006. Plaintiff, on order from her medical care providers, has been unable to return to work since that date, as a result of the consequences of her unlawful workplace. Calculating her damages over the course of approximately fourteen months, she has lost approximately $28,000 in wages. Plaintiff was earning approximately $4.80 per hour for a 24 hour work week, but relied for the bulk of her weekly income on tips, resulting in a weekly income of approximately $500.00 gross. Plaintiff did not receive benefits. Plaintiff has incurred significant medical bills, the majority of which have been paid by her private health insurance. In addition to the above referenced economic damages, Plaintiff is seeking compensatory and punitive damages, as proven at trial, as well as attorney's fee and the costs of this action.

22. Please describe in detail your calculation of damages as described in your response to the foregoing interrogatory, and identify all Documents, including all Correspondence, Financial Records and Communications upon which such calculations are based.

**Response No. 22:** Please See Response No. 21.

23. Please describe in detail all persons of either sex with whom you have had a personal, romantic or sexual relationship since the age of sixteen. Please state the duration of each such relationship, and the circumstances under which each had begun and ended.

**Response No. 23**: Objection. This Interrogatory unnecessarily intrusive, intended to demean and embarrass the Plaintiff and not reasonably calculated to lead to the discovery of relevant information.

24. Identify all expert witnesses whom you expect to call at trial, and provide for each:

(a) a complete statement of all opinions to be expressed and the basis and reasons therefor;

(b) the data or other information considered by the witness in forming the opinions;

(c) any exhibits to be used as a summary of or support for the opinions;

(d) the qualifications of the witness, including a list of all publications authored in the preceding ten years;

(e) the compensation to be paid; and

(f) a listing of other cases in which the witness has testified as an expert at trial or by deposition within the preceding ten years.

**Response No. 24**: Plaintiff has not determined what experts she intends to call at trial and will disclose those pursuant to the Court's pre-trial Order. To date, and not by limitation, Plaintiff will likely call her current medical care providers to establish the nature and extent of her injuries.

Odessa Babbitt
By Her Attorney,

Stephen T. Fanning #3900
stephenfanning@msn.com
305 South Main Street
Providence, RI 02903
401-272-8250
401-272-4520 fax

Verification

I hereby verify that the above is true and accurate to the best of my knowledge and recollection.

__________ (Signature)

Subscribed and sworn before me on this 24 day of October, 2007.

Notary Public __________ My Commission Expires 8/13/11

CERTIFICATION

I hereby certify that I delivered a copy of the within to Dennis R.Gannon, counsel to the Defendant at 1140 Reservoir Avenue, Suite 3A, Cranston, RI 02920 by hand on this 25th day of October 2007.